PERRY HARTMAN CANADAY et al.

*v.*

THE STATE OF TENNESSEE.

(*Nashville,* December Term, 1957.)

Opinion filed February 6, 1958.

H. G. B. KING, Chattanooga, Z. T. OSBORN, JR., Nashville, for appellants.

THOMAS E. FOX, Assistant Attorney General, for appellee.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The defendants below, Perry Hartman Canaday and C. B. Richardson, were convicted for a conspiracy to commit an assault and battery and fined $1,000 each, and sentenced to serve in the county workhouse for a period of eleven months and twenty-nine days. The third defendant, James Gilley, was acquitted by the jury.

*The record discloses that the defendants did not take the stand and did not testify in their own behalf.*

The principal assignment of error is that the evidence preponderates against the verdict of the jury and in favor of the innocence of these two men.

It appears that the prosecutor, one James T. Bruce, was a very small man in stature and was beaten up in the restaurant where the alleged assault and battery took place.

It seems that the person, who actually committed the assault, was never found and, of course, not brought to trial. The victim, Bruce, was carried to Vanderbilt Hospital on the date of his injury, after having first been carried to the General Hospital. Doctor Meacham, at Vanderbilt Hospital, found that the victim had a skull and jaw fracture and that he was suffering concussions of the brain which caused him to be semi-conscious. He was treated by Doctor Meacham until January 3, 1956.

It appears that on the day of the assault, Bruce went with five of his companions to Martin's Restaurant on Murfreesboro Road, to eat, and this was on November 21, 1955, between five and six p.m. He and his companions

were all operators of tractors leased to the B & S Motor Lines, Inc. Some of them owned the truck they operated and considered themselves to be independent contractors, paid on a mileage basis. Others did not own the truck they operated but none of them thought themselves to be employees of the B & S Motor Lines.

It seems that until shortly before November 25, 1955, and from about February 2, 1955, the Teamster's Union Local 327 had maintained a picket line near the B & S Motor Lines, which the victim and some of his companions on November 21st had crossed with their trucks during the time the picketing was in progress.

It seems that Bruce had received a subpoena to testify as one of the principal witnesses before the National Labor Relations Board.

The defendants were seen on the picket line several times during the period it was maintained by the victim. Bruce knew the defendant Richardson, who had worked for him as a relief driver. Some of his companions knew the defendants by name and all of them knew the defendants by sight having seen them in the picket line.

Robinson, a State's witness, testified that when he, Bruce and their four companions arrived at Martin's Restaurant to eat he, Robinson, when outside the restaurant to the restroom, noticed the defendant Richardson getting in his car which was parked behind the restaurant in the alley.

After dinner together at the same table, these drivers left the restaurant—each of them paying his own check as they passed the cash register near the front entrance of the restaurant. All of them noticed a man sitting on a

stool at the counter near the cash register, who was wearing a green work shirt with the words on the back of the shirt "North Texas Steel Company."

These drivers did not know when this man entered the restaurant, but one of the drivers saw him there while they were eating and noticed that he seemed to be watching the witness and also noticed another man with him whom the witness identified as James Gilley. Mr. Martin, the owner of the restaurant, testified that the man with the green shirt and a companion, whose name he did not know, but who was not James Gilley, entered the restaurant while the truck drivers were eating. One of these men sat on a stool at the counter near the cash register, and the other by his side. It seems that the defendants, Canaday and Richardson, did not enter the restaurant while Bruce and his companions were eating.

Later on some of the truck drivers were waiting at the car in which they were riding and others were on their way to the car parked beside the restaurant when they heard a "thud like" sound. They then saw Bruce lying with his face down and in an unconscious condition near the entrance to the restaurant. Just behind him stood the man with the green work shirt, who had been at the counter and another man identified by the truck drivers to be James Gilley.

Witness, Wayne Puckett, testified that James Gilley was not standing there with the man in the green work shirt and he also testified that he did not see the defendants, Canaday and Richardson, appear on the scene a few minutes later which was also contrary to the testimony of his companions.

When the man with the green shirt was asked why he hit Bruce, he replied, "Because he is a God Damn Scab!"

The witness, Robinson, further testified that after Bruce was struck both defendants, Canaday and Richardson, were seen talking to the man with the green work shirt and the other man standing by him near the front of the restaurant where the victim was struck. The four of them soon disappeared around the corner of the restaurant and then immediately came back around the restaurant in a two-tone Ford car heading toward Nashville. Canaday was driving and the man in the green shirt was on the front seat with him. Defendant Richardson and James Gilley were on the back seat.

This was corroborated and verified by other truck drivers except Wayne Puckett, who also saw them drive to the restaurant and in back of the restaurant from the direction of Murfreesboro, immediately prior to the time they were seen talking to the man wearing the green shirt and this man standing by him.

We think, under the above statement of facts, that there is sufficient evidence to support the verdict of the jury. It is true that no formal agreement to commit the assault upon Bruce is shown, but the circumstances revealed in the record show that there was a common understanding and design on the part of the defendants and the man with the green shirt, who actually made the assault on Bruce.

In *Solomon v. State,* 168 Tenn. 180, 188, 76 S.W.2d 331, 334, it was said:

"No formal agreement between the parties to do the act charged is necessary. It is sufficient that the minds of the parties meet understandingly so as to bring about an intelligent and deliberate agreement to do the acts and to commit the offense charged, although such agreement is not manifested by any formal words, or by a written instrument. A mutual implied understanding is sufficient, so far as the combination or confederacy is concerned, to constitute the offense. If two persons pursue by their acts the same object often by the same means, one performing one part of the act and the other another part of the act, so as to complete it with a view to the attaining of the object which they are pursuing, this will be sufficient to constitute a conspiracy. Previous acquaintance is unnecessary, and it is not essential that each conspirator shall take part in every act, or that he shall know the exact part to be performed by the other conspirators in execution of the conspiracy. Conspiracy implies concert of design and not participation in every detail of execution."

Complaint is also made about the instructions of the trial judge to the jury. We think the trial judge gave an adequate and sufficient charge as to the term reasonable doubt.

We have considered all of the assignments of error, find them without merit and the judgment of the lower court is affirmed.